# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01638-NYW

TAMARA BRYANT,

     Plaintiff,

v.

STATE OF COLORADO, DEPARTMENT OF TRANSPORTATION,
EARL BYRON REAMS, II, and
THE H. NEIL REAMS FAMILY LLLP, a Colorado limited liability limited partnership,

     Defendants.

---

## ORDER ON MOTION IN LIMINE

---

Magistrate Judge Nina Y. Wang

     This matter comes before the court on Plaintiff Tamara Bryant's ("Plaintiff" or "Ms. Bryant") Partially Unopposed Motion in Limine ("Motion in Limine") [#100, filed April 27, 2018]. The Motion is before the court pursuant to the Order of Reference dated August 19, 2016 [#39], 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. The court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law. For the following reasons, the Motion in Limine is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

     On December 21, 2015, Ms. Bryant was a passenger in a truck travelling westbound on Colorado State Highway 145 in or around the Nucla/Naturita community. At approximately 7:00 p.m., the truck in which Plaintiff was riding struck a cow that another motorist had previously hit and immobilized. [#28 at ¶¶ 13-17]. The cow was owned by John William Reams, Earl Brown Reams, II, and/or the H. Neil Reams Family LLLP (collectively, the "Reams

Defendants"). [*Id.* at ¶ 15]. The collision caused the vehicle to flip onto its passenger side and skid along the pavement at a high velocity, during which Plaintiff's right arm "was pulled out of the passenger window and ground down to a stump as a result of road friction." [*Id.* at ¶¶ 18-19]. Plaintiff sustained multiple injuries in addition to losing her right arm, and seeks damages including but not limited to present and future hospital and medical expenses, past and future lost wages, and loss of enjoyment of life. [*Id.* at ¶ 20].

Plaintiff initiated this personal injury action on June 24, 2016 by filing a Complaint that asserted four common law claims against Defendants the State of Colorado, Department of Transportation ("CDOT"), John William Reams ("John Reams"), Earl Brown Reams, II ("Earl Reams"), and the H. Neil Reams Family LLLP (the "Partnership"). [#1]. The case ultimately proceeded with a Second Amended Complaint asserting claims for premises liability pursuant to Colo. Rev. Stat. § 13-21-115 and for negligence as to CDOT, [#56 at 4-6], and for negligence and exemplary damages as to the Reams Defendants. [*Id.* at 6-8]. CDOT and the Reams Defendants respectively designated as a nonparty at fault Kirk Powell, the driver of the vehicle in which Plaintiff was riding at the time of the accident. [#43; #44].

On May 25, 2017, CDOT filed a Motion for Summary Judgment, arguing that there is no evidence to support finding that the subject cow wandered through a CDOT fence, and there is no evidence that CDOT was provided with actual notice of a defect in a CDOT fence line through which the subject cow ultimately escaped. [#66]. The Reams Defendants filed their own Motion for Summary Judgment regarding the negligence claims. [#69]. The briefing of the Motions for Summary Judgment was delayed pending additional discovery that Plaintiff requested, and which the court granted, but was completed by the end of August 2017.

On December 14, 2017, the court held limited oral argument on the Motions for

Summary Judgment and presided over a Final Pretrial Conference, [#86], and subsequently entered a Final Pretrial Order setting a ten-day jury trial to commence on June 4, 2018 at the federal courthouse in Grand Junction, Colorado. [#87]. Shortly thereafter, the court issued a written opinion and order denying CDOT's Motion for Summary Judgment and granting the Reams Defendants' Motion for Summary Judgment with respect to the claims asserted against John Reams and the claim for exemplary damages in general, but otherwise denying the Reams Defendants' Motion. [#90].[1]

On April 27, 2018, Plaintiff filed the Motion in Limine seeking to preclude admission during trial of five categories of evidence: (1) all evidence or testimony concerning marijuana use by Plaintiff or Mr. Powell; (2) testimony regarding the lack of citations issued following the accident; (3) the traffic accident report and Trooper Mark Hanson's testimony regarding the speed at which Mr. Powell's truck was traveling at the time it collided with the cow; (4) all collateral source evidence of medical insurance payments; and (5) reference to Colo. Rev. Stat. § 35-46-111 in Deposition Exhibit 47. *See* [#100]. CDOT does not oppose the Motion in Limine; the Reams Defendants oppose the Motion with respect to the first, third, and fifth categories of evidence. [#107]. Plaintiff filed a Reply in support of the Motion in Limine on May 25, 2018. [#140].

That same day, Plaintiff filed a Notice of Settlement as to CDOT. [#135]. The settlement prompted the Reams Defendants to file an Unopposed Motion to Amend the Scheduling Order to permit them to designate CDOT as a non-party at fault pursuant to Colo. Rev. Stat. § 13-21-111.5 ("Motion to Designate Non-Party at Fault"), [#136], which was accompanied by the Designation of CDOT as a Non-Party at Fault. [#137].

---

[1] Henceforth, the designation the "Reams Defendants" refers to Earl Reams and the Partnership.

## ANALYSIS

Motions in limine exist outside of the Federal Rules of Civil Procedure and Federal Rules of Evidence and serve to enable the court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline,* 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996) (further citations omitted)). Pretrial rulings issued in response to motions in limine can save time during trial as well as cost and effort for the parties as they prepare their cases. However, "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Industries, Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) (citing *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard [of clearly inadmissible], evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.")).

## I. Evidence Regarding Mr. Powell's Marijuana Use

### A. Arguments

Plaintiff asks the court to preclude during trial the admission of evidence, and associated argument, regarding Mr. Powell's use of marijuana. *See* [#100 at 5].[2] Mr. Powell testified at his deposition that at the time of the accident he had a medical marijuana card associated with a back injury he had sustained and that he had used marijuana around 10:00 a.m. the morning of the accident. [#107-1 at 21:9-25]. Plaintiff contends that whether she or Mr. Powell smoked or otherwise ingested marijuana the day of the accident "is not relevant as it has no tendency to make the existence of any fact that is of consequence to the determination of the action more

---

[2] The Reams Defendants represent that they currently do not intend to offer any evidence regarding marijuana use as to Ms. Bryant. [#107 at 1, n.1].

probable or less probable than it would be without the evidence." [#100 at 5]. Plaintiff asserts

in particular that there is no evidence that marijuana use had any impact on Mr. Powell's driving

on the night of the accident, and any potential probative value regarding this testimony "is

substantially outweighed by the risk of unfair prejudice, confusion of issues," and possibility that

the jury would be misled. [*Id.*] The Reams Defendants argue in Response that "the fact that Mr.

Powell used marijuana on the date of the incident is relevant in multiple aspects, including his

negligence." [#107 at 3]. They assert that "[a] jury can infer from drug use that Mr. Powell was

impaired while driving the vehicle, and expert testimony is not necessary to establish this link,

and that, rather, "it is common knowledge, well within the knowledge base and experience of the

average juror, that one should not operate vehicles or machinery after using marijuana." [*Id.*] In

Reply, Plaintiff argues that (1) it is not clear that he used marijuana the day of the accident; (2)

there is no evidence that he was impaired by marijuana at the time of the accident; and (3) it

would be improper for a jury to infer that he was impaired. [#140].

### B.      Applicable Law and Findings

Rule 401 of the Federal Rules of Evidence advises that evidence is relevant if "it has any

tendency to make a fact more or less probable than it would be without the evidence," and "the

fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). The court may

nonetheless exclude relevant evidence "if its probative value is substantially outweighed by a

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* at 403.

In addition, opinion testimony based on scientific, technical, or other specialized

knowledge must be offered by an expert witness pursuant to Fed. R. Evid. 702. Fed. R. Evid.

701, 702; *see LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) ("[A]

person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person.") (quotation marks and citation omitted). Expert witnesses must be disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2)(A)-(B). The disclosure generally must be accompanied by a written report for any witness who is retained or specially employed to provide expert testimony in the case. Fed. R. Civ. P. 26(a)(2)(B). In relevant part, the report must contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them." *Id.* at 26(a)(2)(B)(i)-(iii). "A party is under a continuing duty to supplement the expert report if there are additions or changes to what has been previously disclosed." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (citing Fed. R. Civ. P. 26(a)(2)(C), 26(e)(1)). A party who fails to disclose or supplement information required under Rule 26(a) is not allowed to use that information to supply evidence at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

As an initial matter, this court respectfully disagrees with Plaintiff that Mr. Powell's testimony regarding his marijuana use the morning of the accident is equivocal. When asked, "[o]ne way or the other, you can't remember if you had any marijuana that day," Mr. Powell responded, "[n]o, I told you I did this morning." [#107-1 at 21:21-23]. Therefore, contrary to Plaintiff's argument, Mr. Powell's deposition testimony is not unclear as to whether he used marijuana the day of the accident. As the unrebutted testimony stands at this point, Mr. Powell testified that he used marijuana that day, and his only equivocation is about the precise time of use.

Nevertheless, I find that evidence of Mr. Powell's marijuana use should be precluded because expert testimony is necessary to establish the inference the Reams Defendants seek, i.e., that Mr. Powell's use of marijuana rendered him impaired, resulting in the negligent operation of his motor vehicle. A review of cases in the Tenth Circuit addressing similar issues indicates that testimony regarding the impact of marijuana use on the operation of a vehicle is generally offered through an expert witness. *See, e.g., Indemnity Ins. Co. of North America v. Pettit*, No. 04–CV–23–B, 2006 WL 8432396 (D. Wyo. Apr. 10, 2006); *BNSF Railway Company v. Lafarge Southwest, Inc.*, No. 06–1076 MCA/LFG, 2009 WL 9144600 (D.N.M. Jan. 27, 2009). Indeed, in the case the Reams Defendants cite in support of their argument, an expert witness was used to offer such testimony. *See Durham v. Cty. of Maui*, 742 F. Supp. 2d 1121 (D. Hawai'i 2010). In *Durham*, a case involving fatal injuries resulting from an automobile accident, the plaintiffs sought to exclude any evidence regarding a postmortem blood test and any testimony by the physician who administered the test regarding the presence of tetrahydrocannabinol ("THC") in the decedent's blood sample. The magistrate judge determined on referral that the physician's testimony was admissible under Rule 702 and relevant to the claims presented, and the district court overruled plaintiffs' objections. *Id.* at 1129-30. For the purpose of their argument, the Reams Defendants rely on the *Durham* court's finding that the jury could reasonably infer from the postmortem blood test that marijuana had impacted the decedent's ability to operate the vehicle in a safe manner, notwithstanding the absence of opinion by the physician regarding impairment. *Id.* at 1130-31. However, the defendants in *Durham* had designated the physician as an expert witness for the purpose of his testifying as to both the presence of THC in the decedent's blood stream and the decedent's recent use of marijuana prior to the accident. And the cases relied on by the *Durham* court similarly involve the introduction of evidence, through

7

expert testimony, of the presence of THC or other impairment-causing narcotics in the system at the time of the subject accidents. [3,4]

The court finds the *Pettit* decision to be more instructive. The *Pettit* court considered a motion in limine to suppress expert testimony regarding the presence of marijuana in the system of one of the four individuals killed in the underlying automobile accident. The plaintiff insurance company argued that the expert testimony was not relevant or reliable because neither expert could testify to a reasonable degree of probability that the decedent's driving ability was impaired by marijuana, and that the prejudice resulting from any evidence of marijuana use by the decedent substantially outweighed its relevance because the jury would be encouraged to speculate about the cause of the accident. *Pettit*, 2006 WL 8432396, at *2. That court considered expert testimony that marijuana produces 30–40 chemical compounds in the body, known as cannabinoids, and that "[t]he only cannabinoid with psychoactive properties that may cause impairment is…THC," marijuana impairment occurs only when THC is in a person's blood, THC typically moves out of the blood within approximately four hours, and "[t]he only chemical test that can provide a reliable foundation for a conclusion about impairment at any

---

[3] *See also Sundance Energy Oklahoma, LLC v. Dan D. Drilling Corp.*, No. CIV–13–991–R, 2015 WL 1957090, at *5 (W.D. Okla. Apr. 29, 2015) (admitting evidence as to decedent's drug use, despite lack of expert opinion as to impairment, where plaintiff presented evidence through expert witness that decedent had methamphetamine in his system at time of accident and had disobeyed orders regarding a drilling line, which led to the fatal accident, and where expert testified as to possible effects of methamphetamine on a person's behavior, "including causing impulsive and aggressive behavior").

[4] The court also notes that the *Durham* court reasoned that "[e]vidence of drug consumption, *when combined with other evidence attributing fault*, may be highly relevant to the issue of the causal relationship between [a party's conduct] and [ ] the injuries." *Durham*, 742 F. Supp. 2d at 1130 (internal quotation marks and citation omitted) (emphasis added). Notwithstanding the designation of Mr. Powell as a nonparty at fault, the Reams Defendants do not identify in their Response other evidence in the record that attributes fault to Mr. Powell, and, for reasons discussed later in this Order, the Reams Defendants will be precluded from admitting evidence that Mr. Powell was speeding at the time of the accident.

particular time is a contemporaneous blood test for THC." *Id.* at *3. That court also considered that none of the postmortem tests established that THC was in the decedent's blood at the time of the accident, and thus the court found that the blood and urine tests showing the decedent's past marijuana use were "unreliable and irrelevant to whether [he] was impaired by marijuana at the time of the accident." *Id.* at *4.

Here, there is no evidence regarding whether the marijuana Mr. Powell smoked contained the THC component, or even assuming it did, its concentration level. Furthermore, he testified that he smoked marijuana at approximately 10:00 a.m., and the accident occurred at approximately 7:00 p.m. There is no evidence in the record demonstrating that THC was in Mr. Powell's blood stream when the accident occurred, and the expert testimony in *Pettit* suggests that THC would have left his system in the intervening nine hours. Evidence is unfairly prejudicial when it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Notes to Federal Rule of Evidence 403. The Reams Defendants have not disclosed an expert witness to present testimony that THC was in Mr. Powell's system, or that his ability to drive was likely impaired by the marijuana he had smoked that morning. *See* [#87 at 15]. Without evidence that THC was in fact in Mr. Powell's blood stream at the time of the accident, or any instruction from an expert witness as to the timeline during which THC could have remained in Mr. Powell's system for the purpose of causing impairment or what effect such THC could have on Mr. Powell's ability to drive, I find both that his use of marijuana the morning of the accident is not relevant to any claim that he was negligent in the operation of the truck that struck the cow, and that any probative value associated with evidence of Mr. Powell's use of marijuana is substantially

outweighed by the potential of unfair prejudice and possibility of confusing and/or misleading the jury. The court will GRANT the Motion in Limine as to this issue.

## II.     Evidence Regarding the Speed of Mr. Powell's Truck

### A. Arguments

Plaintiff also asks the court to preclude during trial the admission of evidence, and associated argument, regarding Trooper Hanson's estimation of speed at which Mr. Powell's truck was traveling at the time of the accident. [#100 at 6]. Trooper Hanson is the law enforcement officer who investigated the accident and drafted an accident report. During his deposition and in the accident report, Trooper Hanson estimated that the truck was traveling at approximately 65 miles per hour when it struck the cow.[5] He based this estimation on statements offered by witnesses Jonathan White and Misty Galley and on accident reconstruction calculations that he performed with the help of a fellow state patrol trooper. *See* [#100-1 at 57:23-58:11, 60:8-61:9, 61:24-62:17, 63:1-67:17]. Plaintiff contends that Trooper Hanson was not disclosed as an expert under Federal Rule of Civil Procedure 26(a)(2), and argues that the estimation of speed based on the accident reconstruction calculations should be precluded as inadmissible under Fed. R. Evid. 702 and, to the extent the estimate is based on the statements of Ms. Galley and Mr. White, it should be precluded as inadmissible hearsay. [#100 at 7]. The Reams Defendants argue in response that the testimony they wish to designate from Trooper Hanson's deposition does not concern "'expert' type opinions, but [is] rather based upon his perceptions and the results of his observations," and, moreover, the accident report is admissible under Fed. R. Evid. 803(8) as a public record. [#107 at 5-6]. In Reply, Plaintiff argues that whether or not the accident report is admissible is not dispositive. Rather, Plaintiff contends that

---

[5] Trooper Hanson is not available for trial and the Parties have designated portions of his deposition testimony to be read into the record.

Trooper Hanson's testimony regarding Mr. Powell's alleged speed is based on second-hand information from lay witnesses, as he did not personally observe the rate of speed of Mr. Powell's vehicle, and that statements regarding the speed contained in the accident report are unreliable double hearsay.  [#140]

### B.  Applicable Law and Findings

The court agrees with Plaintiff that the estimation of speed based on the accident calculations is testimony "based on scientific, technical, or other specialized knowledge," which must be offered within the scope of Rule 702.  Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  By contrast, under Rule 701 testimony must be (1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701.  "The perception requirement stems from F.R.E. 602 which requires a lay witness to have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact." *Dahlberg v. MCT Transportation, LLC*, 571 F. App'x 641, 649 (10th Cir. 2014) (quoting *United States v. Bush,* 405 F.3d 909, 916 (10th Cir. 2005) (internal quotation marks omitted)).  "The non-scientific-knowledge requirement, in turn, prohibits lay witnesses from expressing opinions as to matters 'which are beyond the realm of common experience and which require ... special

skill and knowledge.'" *Dahlberg*, 571 F. App'x at 649 (quoting *James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1214 (10th Cir. 2011)).

Trooper Hanson testified that he arrived at the scene of the accident at approximately 8:00 p.m., about an hour after the collision occurred, *see* [#110-2 at 15:4-8], and proceeded to take measurements at the scene for the purpose reconstructing the accident and writing an accident report. He testified that he "had one of our victim crime units" help him with calculations regarding skid distance and drag factor, which helped them calculate the speed of the truck when it collided with the cow: "I provided [the officer from the victim crime unit] numbers and he plugged and played with the equations." [#100-1 at 62:3-17; 62:24-66:9]; *see* [#100-2 at 12-15]. Trooper Hanson's estimations regarding speed are thus not the product of his own perceptions or of experience common to everyday life; rather, the estimation is the product of a collaborative effort using technical and/or specialized knowledge and the application of multiple mathematic formulas. *See* Fed. R. Evid. 701, Advisory Committee Note 2000 Amendment ("[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (quotation marks and citations omitted)).

The Reams Defendants did not disclose Trooper Hanson as an expert witness, and thus any testimony he offers must be limited to the confines of Rule 701.[6] *See Dahlberg*, 571 F. App'x at 650 (noting, where defendants did not follow Rule 26(a)'s expert-disclosure requirements, that the "dispositive question" was whether the officer's testimony "about the safe

---

[6] Plaintiff also asserts that the Reams Defendants could not have offered Trooper Hanson as an expert witness because he has only Level I and Level II accident investigation training and has never been qualified as an expert in accident reconstruction. [#100 at 8 (citing #100-1 at 9:6-21, 62:21-23]. The Reams Defendants do not respond to this contention, and the court does not pass on it.

speed of travel and lack of driver error was based on his special skill and knowledge as a police officer…or on his firsthand perceptions…"). As stated above, Rule 701 limits testimony in relevant part to that which is "rationally based on the witness's perception." Fed. R. Evid. 701(a). The "prototypical example[s] of the type of evidence contemplated by the adoption of Rule 701 relate[] to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." Fed. R. Evid. 701, Advisory Committee Note 2000 Amendment. Trooper Hanson arrived after the accident occurred and thus did not witness Mr. Powell driving or the truck's impact with the cow. *See* [#100-1 at 59:18-24]. Accordingly, while Trooper Hanson could offer testimony under Rule 701 as to the darkness of the night, the road conditions at the time he arrived on scene, or the location of the truck's skid marks, he does not possess the first-hand knowledge necessary to opine as to the speed of the truck. *Cf. Dahlberg*, 571 F. App'x at 650 (concluding that officer's testimony regarding safe speed of travel was based on his perception "as a highway motorist on the day of the accident," and that it resulted "from a process of reasoning familiar in everyday life."). Therefore, the Parties will be precluded from offering Trooper Hanson's testimony regarding his estimate of the speed at which Mr. Powell was driving directly before the accident and at the time of the collision.[7]

To the extent the Reams Defendants offer Trooper Hanson's deposition testimony about his conversations with Ms. Galley and Mr. White regarding their perception of how fast Mr. Powell was traveling in the truck, the court agrees with Plaintiff that any such testimony

---

[7] The court notes that Trooper Hanson testified at his deposition that he did not believe that the speed of Mr. Powell's truck was a contributing factor, "because even if he would have been going the posted speed limit, he probably would have still hit the animal in the roadway...[the cow] was laying down…[a]nd it was a black cow on a black highway at an unlit area." [#110-2 at 52:24-53:11].

constitutes inadmissible hearsay. Hearsay is defined as a statement the declarant makes outside of testifying at the current trial or hearing, which a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Additionally, and with the exception of expert testimony offered pursuant to Rule 703, a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. It is undisputed that Trooper Hanson did not have personal knowledge of the vehicle's speed, as he did not arrive at the scene of the collision until after it occurred. During his deposition, Trooper Hanson testified that Ms. Galley told him "that she was going the posted speed or a little bit slower," when Mr. Powell passed her on the road right before the collision. [#100-1 at 57:23-58:11]. Trooper Hanson also testified that he "ask[ed] Mr. White how fast he thought the Toyota pickup was going. He thought about 65, as well," based on the fact that "[h]e was standing on the shoulder of the roadway right north of where the livestock was in the roadway waving his arms," and "he said based on how fast the vehicle that passed him, he felt it was about 65." [*Id.* at 60:19-61:3].

The Reams Defendants do not specifically address Plaintiff's argument that the rule prohibiting hearsay prevents Trooper Hanson from testifying as to Ms. Galley and Mr. White's comments regarding the speed of the truck. Rather, they argue that Trooper Hanson's accident report, which includes the estimation of speed¸ *see e.g.* [#100-2 at 12], does not constitute hearsay because it qualifies as a public record under Fed. R. Evid. 803(8). Public records are considered exceptions to hearsay if: (1) the record sets out the office's activities and a matter observed while under a legal duty to report, or factual findings from a legally authorized investigation; and (2) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness. Fed. R. Evid. 803(8). Here, even assuming the

14

accident report constitutes a public record, the estimation regarding speed derives either from

evidence that must be offered by an expert witness pursuant to Rule 702 (i.e., the calculations of

estimated speed found at [#100-2 at 12-15]), or from inadmissible hearsay. Rule 701 precludes

Trooper Hanson from testifying as a lay witness as to an estimation of speed derived from

technical or specialized knowledge, and he cannot testify as to his own perceptions regarding the

truck's speed because he did not witness the accident. Accordingly, the court will GRANT the

Motion in Limine as to this issue as well, and will preclude the admissibility of [#100-2 at 12-

15].

## III.    Deposition Exhibit 47

Finally, Plaintiff asks the court to redact or otherwise preclude during trial the admission

of a paragraph included in Deposition Exhibit 47, which is a letter written by Earl Reams and

addressed to CDOT, mailed March 22, 2005 (the "Letter"). [#100-3]. The paragraph in dispute

reads:

> Please accept this letter as official notification as described in C.R.S. § 35-46-111
> that states "...it is the duty of the division of highways to maintain right-of-way
> fences along and adjacent to all federal aid highways constructed by the division,
> where such highways are maintained by the division." In further explanation of
> this law, the CCA News goes on to explain "However, they only have the duty to
> repair such fences upon actual notice that the fence is in need of repair. It is the
> duty on both motorists and landowners to give that notice."

[#100 at 11]. Plaintiff argues that presentation of the partial quote from Colo. Rev. Stat. § 35-46-

111 "invades the province of the court to instruct the jury on the law," and is misleading "in that

it creates the impression that CDOT has an unequivocal duty to maintain fencing along all

highways when, in reality, CDOT is only responsible for maintaining CDOT fencing that already

exists." [*Id.*] The Reams Defendants contend in response that the suggested redaction "would

result in the letter not making sense," and the court can both instruct the jury not to view the

letter as an accurate statement of law and provide the jury with appropriate instructions regarding the applicable legal standards at the conclusion of the trial. [#107 at 7]. In Reply, Plaintiff asserts that the Reams Defendants fail to articulate how the proposed redaction would create confusion under Rule 403 of the Federal Rules of Evidence, and that leaving the statement intact would cause confusion. [#140 at 9-10].

Up until the time the Parties settled, Plaintiff was asserting a statutory claim against CDOT under Colo. Rev. Stat. 35-46-111. The statute states in relevant part that neither CDOT "nor the landowner is liable for any damages caused by the failure to adequately construct, maintain, or repair the right-of-way fence unless actual notice is given to [CDOT]." Colo. Rev. Stat. § 35-46-111(1)(a). Since the filing of the Motion in Limine, Plaintiff and CDOT have settled, [#135], thus eliminating the statutory claim from this action. The court finds that the Letter is relevant to at least the issue of apportioning fault between CDOT and the Reams Defendants, *see* Colo. Rev. Stat. § 13-21-111.5(2).

The court also finds that the statute is properly quoted, albeit not in its entirety. Nonetheless, the court will require that a portion of the paragraph be redacted, as the portion characterizes a legal obligation:

> In further explanation of this law, the CCA News goes on to explain "However, they only have the duty to repair such fences upon actual notice that the fence is in need of repair. It is the duty on both motorists and landowners to give that notice."

[#100-3]. As to the remainder of the paragraph, the court finds that it can address, and avert, any potential confusion the partial quote might cause the jury by instructing the jury appropriately prior to discharging the jurors for deliberation. *See, e.g., Weeks v. Angelone,* 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). As part of its final instructions, the court will inform the jury that its instructions are the law to be applied to this case and, to the

extent any party's argument and/or any evidence is contrary to the court's instructions, the court's instructions must prevail.

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Partially Unopposed Motion in Limine [#100] is **GRANTED IN PART and DENIED IN PART**.


DATED: May 31, 2018                                    BY THE COURT:

                                                       _____
                                                       United States Magistrate Judge