IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01638-NYW

TAMARA BRYANT,

    Plaintiff,

v.

EARL BYRON REAMS, II, and
THE H. NEIL REAMS FAMILY LLLP, a Colorado limited liability limited partnership,

    Defendants.

_____

**MEMORANDUM OPINION AND ORDER REGARDING JURY INSTRUCTIONS ADDRESSING POTENTIAL APPORTIONMENT OF LIABILITY AS TO COLORADO DEPARTMENT OF TRANSPORTATION**
_____

Magistrate Judge Nina Y. Wang

    This matter is before the court on the issue regarding jury instructions addressing potential apportionment of liability and damages as to the Colorado Department of Transportation ("CDOT"). The Parties dispute the duty applicable to CDOT in its capacity as a nonparty at fault; specifically, whether the court should instruct the jury that actual notice is a prerequisite to apportioning liability to CDOT for any negligence. The court took oral argument on the issue on June 11, 2018, and issued an oral ruling on June 12, 2018. This Memorandum Opinion and Order further explains and memorializes the court's oral ruling.

## BACKGROUND

    Plaintiff Tamara Bryant ("Plaintiff" or "Ms. Bryant") originally sued CDOT along with Defendants Earl Byron Reams, II and the H. Neil Reams Family LLLP (collectively, "Reams Defendants"), John William Reams, and Trace Campbell. [#1]. Ms. Bryant asserted two claims against CDOT: (1) premises liability pursuant to Colo. Rev. Stat. § 13-21-115; and (2) common

law negligence. [*Id.*]. Ms. Bryant asserted a single claim for negligence against the Reams Defendants and John Reams, and a claim for civil conspiracy between the Reams Defendants and Defendant Trace Campbell. [*Id.*]. A First Amended Complaint added Wendy Campbell as a defendant (collectively with Defendant Trace Campbell, "the Campbell Defendants"), [#28], but Plaintiff subsequently dismissed the Campbell Defendants and the civil conspiracy claim, [#34, #35]. The Reams Defendants thereafter designated Kirk Powell as a nonparty at fault. [#44]. The court then permitted a Second Amended Complaint to allow Plaintiff to pursue exemplary damages. [#56].

After the close of discovery, CDOT moved for summary judgment as to the premises liability claim but not as to the common law negligence claim. The court *sua sponte* raised the issue pursuant to Rule 56(f) and ordered the Parties to address whether the common law negligence claim could lie against CDOT. [#85].[1] At oral argument, Plaintiff conceded that no claim for common law negligence could lie against CDOT, [#89 at 7:2-15], and the court dismissed the claim with prejudice. [#88]. The court subsequently granted summary judgment in favor of Defendant John Reams and dismissed the exemplary damages demand, [#90], leaving one claim against CDOT for a violation of Colo. Rev. Stat. § 13-21-115 and one claim against the Reams Defendants for common law negligence.

On May 25, 2018, Plaintiff and CDOT notified the court that they had reached a settlement. [#135]. The Reams Defendants then moved to designate CDOT as a nonparty at fault, [#136, #137], and the court granted the Reams Defendants' motion upon Plaintiff's filing of a Notice of Voluntary Dismissal as to CDOT. [#150, #151]. Because the Parties submitted proposed jury instructions and verdict forms when CDOT was still a party to the suit, the court

---

[1] In the Minute Order setting the oral argument, the court inadvertently referred to CDOT, instead of Ms. Bryant, as bringing the negligence action. [#85].

2

also directed Plaintiff and the Reams Defendants to address how the dismissal of CDOT affected the proposed instructions. [#152]. Trial commenced on June 4, 2018. On June 9, 2018, Ms. Bryant and the Reams Defendants submitted their respective trial briefs as to how to instruct the jury with regard to any apportionment of liability and damages as to nonparty CDOT. [#163, #164]. The central issues present as follows: how to define CDOT's duty for the purpose of apportionment of negligence; whether actual notice is required to find CDOT negligent for the purposes of apportionment; and whether a lack of actual notice precludes Plaintiff from recovering damages from the Reams in this action.

## ANALYSIS

Ms. Bryant contends that the jury must be instructed on a certain provision of the Colorado's fencing statute, Colo. Rev. Stat. § 35-46-111(a)(1), and that under the statute, no liability for negligence can be apportioned to CDOT unless the jury finds that CDOT was provided actual notice of a defect in its fencing. [#164]. In their trial brief, the Reams contend that the jury need not be instructed on Colorado's fencing statute or provision regarding actual notice, and rather that it need consider only whether CDOT was generally negligent. [#163; #166]. During oral argument held June 11, 2018, the Reams Defendants argued additionally that even were consideration of the fencing statute appropriate, section 35-46-111(1)(a) defines CDOT's duty without a requirement of actual notice.

### I.  Source of CDOT's Duty

It is axiomatic that a party's negligence flows from the particular duty it owes. "A cause of action in tort arises out of a violation of a legal duty imposed upon an actor to avoid causing harm to others." *United Blood Servs. v. Quintana*, 827 P.2d 509, 519 (Colo. 1992). In addition, a nonparty must owe a legal duty to the plaintiff in order to be designated as a nonparty at fault.

3

*See Miller v. Byrne*, 916 P.2d 566, 578 (1995) ("Consequently, we hold that, generally, the person or entity designated under § 13-21-111.5 must, in order for his or her fault to be measured under the statute, owe or have owed a duty recognized by law to the injured plaintiff."). The existence of a duty is a separate consideration from whether a particular party may be held liable for breach of any duty. Under the Colorado Governmental Immunities Act ("CGIA"), sovereign immunity generally bars any action against a public entity for injuries that lie in tort or could lie in tort. *Smokebrush Found. v. City of Colorado Springs*, 410 P.3d 1236, 1240, *reh'g denied* (Feb. 26, 2018) (citing § 24-10-108, C.R.S. (2017)). But entities that are immune because of sovereign immunity may still be designated as nonparties at fault. *Miller*, 916 P.2d at 577; *In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1465, 1466 (D. Colo. 1989). This concept derives from the principle that a tortfeasor, judicially determined to be liable, should pay "no more than the relative share of the damage he caused." *In re Crash Disaster*, 720 F. Supp. at 1466.

Because jurisdiction in this matter is based on diversity, [#58 at 1, ¶ 2], the court applies Colorado state law and, accordingly, follows the most recent decisions of the state's highest court, if any such decisions exist. *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665—66 (10th Cir. 2007). Where there is no controlling state decision, the federal court must attempt to predict what the state's highest court would do, *id.*, which may include consideration of decisions by the state's lower courts. The Parties did not identify, and this court could not independently find, any decision from the Colorado Supreme Court that squarely addressed what standard of care applies to CDOT as a designated nonparty at fault in an action regarding livestock that wandered onto a public highway. Accordingly, the court will consider the manner in which Colorado courts have interpreted CDOT's duties in other contexts.

In *State v. Moldovan*, 842 P.2d 220, 222 (Colo. 1992), the Colorado Supreme Court discussed the history of the Colorado Fence Law in considering the applicable duties of the defendants the State of Colorado and the Colorado Department of Highways, the predecessor to CDOT. Under common law, prior to enactment of the Colorado Fence Law, an owner of a trespassing animal was strictly liable for any harm caused by the animal during a trespass. *Id.* (citations omitted). The Colorado Fence Law "modified the common law doctrine which held the owner of trespassing livestock strictly liable for their trespasses on the lands of others." *SaBell's, Inc. v. Flens*, 627 P.2d 750, 751 (Colo. 1981). In considering whether there was a private right of action, the *Moldovan* court looked to "the nature and extent of the state's duty **under the Fence Law**" to ask "whether the state's failure to maintain a right-of-way fence adjacent to a state highway, as alleged…, renders the state liable in a private tort action for injuries sustained by a highway user." *Id.* at 225 (emphasis added). The court's review of the statutory text of the Colorado Fence Law, considered within the context of the history and structure of the Fence Law, indicated that:

> the primary purpose of **imposing an affirmative duty** on the Division of Highways to maintain a right-of-way fence along and adjacent to a highway is to protect highway motorists from the danger of injuries resulting from a collision with trespassing livestock.

*Id.* at 226 (emphasis added). The *Moldovan* court went on to characterize the duty of the Department of Highways as a "statutory duty," rather than one arising under common law. *Id.* Consistent with the Colorado Supreme Court's holding, this court concludes that CDOT's comparative negligence does not derive from a general duty of care to Ms. Bryant under the Premises Liability Act, as suggested by the Reams Defendants, but from a statutory duty created

by the legislature.[2]  *Cf. Burnett v. State Dep't of Nat. Res., Div. of Parks & Outdoor Recreation*, 350 P.3d 853, 857 (2013) (observing that the duty to maintain the highway and thus the fence, in turn, derives from another statute), *aff'd in part sub nom. Burnett v. State Dep't of Nat. Res.*, 346 P.3d 1005 (2015).  *But see Robinson v. Kerr*, 355 P.2d 117, 119 (Colo. 1960) (holding that the Colorado Fence Law was inapplicable to a personal injury action resulting from a trespassing animal).

## II.  Scope of Duty

Having determined that CDOT's duty derives from the Colorado Fence Law, the court now considers the relevant scope of duty as defined by the statute.  Colo. Rev. Stat. § 35-46-111(1)(a) states:

> Except as otherwise provided … it is the duty of the department of transportation to maintain right-of-way fences constructed as of June 1, 1994, by the department at or near the boundary of the department's highway property in agriculturally zoned areas along and adjacent to all federal aid highways where such highways are maintained by the department. The department shall make repairs to such right-of-way fences when necessary only upon actual notice to the department. Neither the department nor the landowner is liable for any damages caused by the failure to adequately construct, maintain, or repair the right-of-way fence unless actual notice is given to the department.

Plaintiff argues that CDOT can be negligent for the purpose of apportionment only if it had actual notice, i.e., knowledge, of the defect.  *See* [#164].  Specifically, Ms. Bryant relies on the last sentence of subsection (1)(a) for the proposition that the statute "defines and limits CDOT's duties based on whether or not there was actual notice to CDOT."  [*Id.* at 2-3].  Plaintiff argues that the first sentence of subsection (1)(a) defines a duty owed by CDOT to maintain right-of-

---

[2] This conclusion is reinforced by CDOT and Ms. Bryant's stipulation that no common law negligence claim could lie against CDOT.  *See* [#89 at 3:7-10:2].  In addition, though the court permitted an opportunity to address the issue of whether CDOT has a duty separate from its statutory duty, the Reams Defendants did not identify any duty running from CDOT to Ms. Bryant outside of its statutory duty as defined by Colo. Rev. Stat. § 35-46-111.  [*Id.* at 7:25-10:2].

way fences, and that the duty is circumscribed by the language of the second sentence requiring actual notice. [*Id.* at 4]. While the Reams Defendants did not address the issue of statutory duty in their trial brief, they contended during oral argument that the first sentence of the subsection defines CDOT's duty, and that the last two sentences pertain to whether a plaintiff could recover from CDOT for its negligence. The Reams Defendants then drew an analogy to sovereign immunity, arguing that while CDOT might not be liable for damages to Plaintiff without actual notice, its duty for the purpose of apportioning negligence is separate and not modified by a requirement of actual notice.

The Parties do not dispute that the plain language of § 35-46-111(1)(a) imposes a statutory duty upon CDOT to "maintain right-of-way fences constructed as of June 1, 1994, by the department at or near the boundary of the department's highway property in agriculturally zoned areas along and adjacent to all federal aid highways where such highways are maintained by the department," but disagree as to whether the duty is modified by the second sentence that "[t]he department shall make repairs to such right of-way fences when necessary only upon actual notice to the department." Because the statute uses two different terms, i.e., "maintain" and "repair," this court interprets those terms as distinct from one another. *See People In Interest of L.M.*, 416 P.3d 875, 879 (Colo. 2081) (observing that courts should avoid "statutory interpretations that render certain words or provisions superfluous or ineffective").

The Colorado Fence Law does not define "maintain." *See* Colo. Rev. Stat. § 35-46-101 *et seq.* Therefore, this court looks to other sources to interpret the meaning of the word. In *Medina v. State*, 35 P.3d 443 (Colo. 2001), the Colorado Supreme Court considered what "maintain" meant in the context of a public highway. Specifically, the court considered whether the State was engaged in maintaining or designing a highway, where the CGIA waived sovereign

immunity only as to a failure to maintain. The *en banc* court defined "maintain" as to keep a road "in the same general state of being, repair, or efficiency as initially constructed." *Medina*, 35 P.3d at 448 (citing *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384–86 (Colo. 1997)). And the court held that "it is the development of a dangerous condition of a public highway, subsequent to the initial design and construction of the highway, that creates in the state a duty to return the road to 'the same general state of being, repair, or efficiency as initially constructed.'" *Medina*, 35 P.3d at 448 (citation omitted). By analogy, this court concludes that CDOT's duty to maintain requires it to keep a right-of-way fence in the same general state of being, repair, or efficiency as initially constructed, and that if a dangerous condition develops after the fence is built, CDOT has a duty to return the fence to the same general state of being, repair, or efficiency. By its plain terms, this duty of maintenance is not dependent upon notice, and it runs from CDOT to the public, including Plaintiff Tamara Bryant.

The term "repair," is also not defined by statute, and this court could not find a case defining "repair" with respect to highways or fences. Accordingly, the court considers the plain meaning of "repair," as "to restore by replacing a part or putting together what is torn or broken." *See* Repair, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/repair (June 12, 2018). Based on the manner in which "maintain" is defined, i.e., to include but not be limited to repair, and the third sentence of the subsection that lists maintain and repair separately, this court concludes that CDOT's duty to maintain is broader than, and includes but is not limited to, its duty to repair.

Additionally, this court agrees with Defendants that the third sentence of the subsection, which expressly refers to liability for damages, does not appear to add to or circumscribe CDOT's duty, but rather constitutes a waiver of sovereign immunity to the recovery of money

8

damages in certain circumstances. As previously discussed, the case law is clear that even entities that are immune from suit or damages may be designated as nonparties at fault. Under the plain language of this third sentence, CDOT could be determined negligent but remain immune from money damages. Arguably, an aggrieved party could still seek injunctive relief. As an example, there is a notice requirement associated with the CGIA, and lack of notice does not make the public entity any less negligent, but rather acts as a jurisdictional bar to recovery from the entity.

Therefore, the court's analysis of CDOT's duty under § 35-46-111(1)(a) turns on the interpretation of the second sentence, "[t]he department shall make repairs to such right-of-way fences when necessary only upon actual notice to the department," and whether the sentence introduces an element of actual knowledge for the purpose of finding that CDOT was negligent. Once again, the court notes that the question of legal duty and the scope of the duty are questions of law. *Quintana*, 827 P.2d at 517 (Colo. 1992); *Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980). It is fundamental that in construing a statute the court must seek to ascertain and give effect to the intention of the legislature. *Stephen v. City & Cty. of Denver*, 659 P.2d 666, 667–68 (Colo. 1983). The legislature amended the statute in 1994 to include the notice requirement. But the Parties did not submit legislative history for the court to consider, nor did they advance any argument regarding the legislature's intent with respect to the 1994 amendments. And this court's research, limited by time constraints arising from when the issue was argued and when evidence closed at trial, did not identify any relevant legislative history.

Thus, the court determines and effectuates the legislature's intent by looking first to the ordinary and common meaning of the statute's words. *Sky Fun 1 v. Schuttloffel,* 27 P.3d 361, 367 (Colo. 2001). In reading the three sentences of the subsection together, this court concludes

that the second sentence does not define an additional duty, nor does it circumscribe the duty to maintain as set forth in the first sentence. As discussed above, CDOT's duty to maintain is broader than, and subsumes, a duty to repair. Rather, like the CGIA and other statutes that contemplate certain circumstances in which a public actor waives its sovereign immunity, the court concludes that the second sentence reflects a requirement of actual notice as a mandatory condition precedent to CDOT's affirmative duty to repair, and, in turn, a party's right to maintain an action against CDOT for failure to repair. *See Frtiz v. Regents of Univ. of Colo.* 196 Colo. 335, 339 (Colo. 1978) ("The right to maintain an action against a governmental (state) entity is derived from statutes, and reasonable conditions, such as notice requirement, imposed as a condition precedent to the right to maintain the action are mandatory") (citation omitted). To find otherwise would cause the court to substitute actual knowledge for foreseeability, and nothing in the statute itself or in the limited legislative history that this court reviewed suggests that such a machination is appropriate.

## III. Notice with Respect to Defendants' Affirmative Defense

With respect to the third issue, i.e., whether the Reams Defendants must establish actual notice in order to avoid liability pursuant to Colo. Rev. Stat. § 35-46-111(a)(1), the court finds that the simple answer is yes. The court's analysis regarding the standard for negligence applied to CDOT as a designated nonparty at fault explicitly also finds that actual notice is required to act as a bar to the recovery of damages. Put another way, while demonstrating that CDOT had actual notice of a defect in its right-of-way fencing may not be a prerequisite to finding CDOT negligent for the purposes of apportionment, CDOT must have received actual notice of the need for repairs in order for CDOT and the landowner to be responsible for money damages. And because the Reams Defendants pled the Colorado Fence Law as an affirmative defense to avoid

damages, they bear the burden of proof to establish actual notice by a preponderance of the evidence.

## CONCLUSION

For the reasons set forth herein, the court determines that actual notice is not an element necessary to establish that CDOT was negligent for the purpose of apportionment.

DATED: June 14, 2018

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge