IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01638-NYW

TAMARA BRYANT,

    Plaintiff,

v.

EARL BYRON REAMS, II, and
THE H. NEIL REAMS FAMILY LLLP, a Colorado limited liability limited partnership,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This matter comes before the court on Plaintiff Tamara Bryant's ("Plaintiff" or "Ms. Bryant") Plaintiff's Motion for a New Trial Based on Insufficiency of Evidence Supporting the Verdict ("the Motion" or "the Motion for a New Trial"). [#183, filed July 10, 2018]. Ms. Bryant filed the Motion after this court presided over a jury trial in June 2018 wherein a duly sworn jury of eight individuals returned a complete verdict for the Defendants in this action. Defendants Earl Byron Reams, II and the H. Neil Reams Family LLP ("Reams Defendants") filed their Response on August 31, 2018 [#196], and Ms. Bryant filed her Reply on October 15, 2018 [#201]. The court has determined that oral argument would not materially assist its resolution of the Motion, and thus the matter is now fully ripe and ready for disposition. For the reasons stated in this Memorandum Opinion and Order, the Motion for a New Trial is **DENIED**.

## BACKGROUND

The Reams Defendants own and graze cattle on Parcel 079, located near Highway 145 south of Naturita, Colorado. [#92 at 3–4]. Parcel 079 is partially fenced by both the Colorado Department of Transportation ("CDOT") and the Reams Defendants, but there are unfenced areas where cows may exit the property and wander onto other property, including the highway. [*Id.* at 3]. This unfenced area is located near natural barriers such as steep hill grades. On December 21, 2015, Plaintiff was a passenger in a vehicle travelling southbound on Highway 145 when the vehicle struck a cow owned by the Reams Defendant that had recently been hit in a separate, unrelated automobile collision. [*Id.* at 1–2]. Plaintiff was gravely wounded and lost her right arm. [*Id.* at 2].

Plaintiff originally sued CDOT along with Defendants Earl Byron Reams, II and the H. Neil Reams Family LLLP, John William Reams, and Trace Campbell, a rancher with a seasonal lease to graze cattle on nearby land. [#1; #92 at 3]. Ms. Bryant asserted two claims against CDOT: (1) premises liability pursuant to Colo. Rev. Stat. § 13-21-115; and (2) common law negligence. [#1]. Ms. Bryant asserted a single claim for negligence against the Reams Defendants and John Reams, and a claim for civil conspiracy between the Reams Defendants and Defendant Campbell. [*Id.*]. A First Amended Complaint added Wendy Campbell as a defendant as well [#28], but Plaintiff subsequently dismissed both Campbell Defendants and the civil conspiracy claim. [#34; #35]. The court then permitted a Second Amended Complaint to allow Plaintiff to pursue exemplary damages. [#56].

After the close of discovery, CDOT moved for summary judgment as to the premises liability claim but not as to the common law negligence claim. The court *sua sponte* raised the

issue pursuant to Rule 56(f) and ordered the Parties to address whether the common law negligence claim could lie against CDOT. [#85]. At oral argument, Plaintiff conceded that no claim for common law negligence could lie against CDOT, [#89 at 7:2-15], and the court dismissed the claim with prejudice. [#88]. The court subsequently granted summary judgment in favor of Defendant John Reams and dismissed the exemplary damages demand, [#90], leaving one claim against CDOT for a violation of Colo. Rev. Stat. § 13-21-115 and one claim against the Reams Defendants for common law negligence.

On May 25, 2018, Plaintiff and CDOT notified the court that they had reached a settlement. [#135]. The Reams Defendants then moved to designate CDOT as a nonparty at fault, [#136; #137], and the court granted the Reams Defendants' motion upon Plaintiff's filing of a Notice of Voluntary Dismissal as to CDOT. [#150; #151]. Thus, the only issue left for trial was the common law negligence claim against the Reams Defendants. An eight-day jury trial commenced on June 4, 2018.

Some of the material issues at trial were whether the cow at issue had escaped from Parcel 079 and whether the Defendants had used reasonable care in containing the cow from wandering onto the highway. At the conclusion of the trial and after the denial of Defendants' motions for verdicts as a matter of law, the jury rendered a verdict in favor of Defendants and against Plaintiff. [#175]. Based on the jury's verdict, this court entered Final Judgment on June 14, 2018. [#178]. On July 10, 2018, Ms. Bryant filed this instant Motion for New Trial, arguing that based on the evidence presented at trial, no reasonable jury could reach the verdict that Defendants were not negligent. [#183].

## LEGAL STANDARD

Federal Rules of Civil Procedure 59(a)(1) provides that a court may order a new trial after a jury has returned a verdict. Rule 50(b) provides that a party may file a renewed motion for judgment as a matter of law under Rule 50(a) and include either jointly or in the alternative a request for a new trial under Rule 59. Thus, although Plaintiff moves for a new trial under both Rule 50(b) and Rule 59, the operative legal standard is that for granting a new trial under Rule 59.

The decision to grant a new trial is committed to the sound discretion of the trial court. *Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Corp.*, 853 F. Supp. 2d 1094, 1097 (D. Colo. 2012). "A motion for new trial is not regarded with favor and should only be granted with great caution." *Id.* If a new trial motion asserts that the verdict is not supported by the evidence, the jury's verdict must stand unless it is "clearly, decidedly, or overwhelmingly against the weight of the evidence." *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009); *see also Champion Home Builders v. Shumate*, 388 F.2d 806, 808 (10th Cir. 1967) ("[T]he jury verdict must not be preempted unless it has no basis in fact.").

In ruling on a motion for a new trial, the court considers the evidence in the light most favorable to the prevailing party, *United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000), bearing in mind that "the jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Snyder v. City of Moab*, 354 F.3d 1179, 1188 (10th Cir. 2003). The court must not "appraise credibility, re-weigh the evidence, draw [its] own inferences, or resolve conflicts in the evidence." *Blissit v. Westlake Hardware*, 410 F. App'x 172, 173 (10th Cir. 2011).

**ANALYSIS**

The jury in this case rendered its verdict pursuant to a special verdict form, answering only one question: "Were the defendants, Earl Reams or the H. Neil Reams Family LLLP, negligent?" The jury answered no. [#175 at 1]. The question before the court posed by Ms. Bryant's Rule 59 Motion for a New Trial is whether the jury's finding that the Reams Defendants were not negligent is "clearly, decidedly, or overwhelmingly against the weight of the evidence" described above. *M.D. Mark*, 565 F.3d at 762.

**I.     Trial Testimony**

With regard to the trial testimony, the court finds as follows. The adequacy of Defendants' livestock containment system on and actions with respect to Parcel 079 was thoroughly contested at trial. Parcel 079 is not completely fenced, and Defendants partially relied upon natural barriers to prevent the cows from leaving the parcel and/or straying onto the highway. There was substantial testimony on the feasibility of relying on natural barriers. Both sides rely on the report and testimony of Dean Stindt ("Mr. Stindt"), who was qualified as an expert in land management, including inspection and condition of fencing, and prepared a report on the 079 Parcel. [#184 at 105:13–107:5]. On the question of relying on natural barriers to contain grazing cattle, Mr. Stindt testified that farmers use natural barriers as fence-lines "quite regularly" and particularly on BLM land. [*Id.* at 112:3–21]. Mr. Stindt testified that he found several areas along the natural barriers where a cow could get out, but no indication that the Reams' cows had moved in those areas or escaped through those vulnerabilities. [*Id.* at 118:16–119:2].

The Plaintiff relies on Jennifer Woods ("Ms. Woods"), a livestock handling specialist, who testified that she reviewed "the containment of the animals for the Reams ranch" and found "there

wasn't proper containment provided for the cattle that prevented them from getting out on the road; that there were poor management practices in place, especially in the area of fencing." [#202 at 15:5–16:2]. Ms. Woods formed this opinion without visiting the property. [*Id.* at 20:1–8]. Ms. testified that the containment system at Parcel 079 was inadequate based on her examination of documentation and photographs of the land and the containment system.[1] Ms. Woods further testified that she did not know if the cow at issue came from Parcel 079. [#202 at 47:18–48:4].

Dr. Peel, a Ph.D. in Meat and Muscle Biology who serves as a ranch management consultant, also testified as an expert witness. [#184 at 153:4; 160:1; 161:24–162:4]. Dr. Peel criticized Ms. Woods's report as being "from someone who doesn't understand commercial cow/calf and ranching in the West and big operations." [*Id.* at 164:2–7]. Dr. Peel testified that he found nothing concerning about the Defendants' ranching practices on the 079 Parcel. [*Id.* at 165:22–25]. Dr. Peel testified that he believed the fencing around the 079 Parcel was adequate [*id.* at 174:13–16], that the natural barriers were sufficient [*id.* at 177:17–178:13], and that it was not unusual for ranchers to reply on such barriers—in fact, Dr. Peel testified that he himself used natural barriers and found them "extremely effective and cost-effective." [*Id.* at 178:14–19].

There was ample lay testimony on the question of the adequacy of the Defendants' fencing and other measures as well. Mr. Reams testified that many of the unfenced areas are either impassable for cows, or exceedingly unlikely for a cow to pass as a practical matter. For example, some areas of the 079 Parcel are cliffs steep enough to be "[i]mpassable for a cow"; one natural barrier is a large, steep expanse of naked soil which, without feed, gives a cow no reason to bother

---

[1] Plaintiff asserts that Ms. Woods "testified that Defendants were negligent" [#201 at 3], but this court respectfully finds that it is more appropriate for it to discuss Ms. Woods' factual assumptions and expert opinions without intertwining legal conclusions and concepts.

to cross; another area is simply too rocky to feasibly fence and is similarly without feed to entice a cow. [#194 at 86:4–88:25].

There was also testimony regarding the fence maintenance practices of Defendants. Mr. Reams testified that he regularly checks on the cows when grazing in Parcel 079 [#184 at 31:17–19] did not see any cows out the morning of the accident. [#194 at 95:3]. Ruth Reams, wife to Earl Reams, testified that "Part of [Parcel 079] is [Bureau of Land Management land] and the public likes to go in and access it, and they don't realize necessarily they need to shut that gate." [#184 at 208:25–209:2]. Ms. Reams also testified that the usual practice was to check the fences and perimeter before moving cows into a new parcel. [*Id.* at 211:17–22]. Mr. Reams testified that he "periodically" maintains the fencing, [*id.* at 17:21], and at "pressure area[s]" where cows loiter and are likely to wander off, he builds "better-than-normal" fences. [*Id.* at 20:1–5]. Mr. Stindt testified that the fencing was "in good condition" in most areas. [*Id.* at 111:9–11; 113:1–2].

There was also testimony regarding the potential for cows to breach fencing, even if appropriately maintained and checked. Misty Galley, a local cattle rancher, testified that she maintains a fenced parcel for her cattle but that they still manage to get out "all the time" because "[t]hey're cows. They go where they want." [#195 at 28:7–11]. Dr. Peel testified that a determined cow will overcome "even . . . a great fence." [#184 at 171:15–172:10].

The testimony was inconclusive as to whether the cow came from Parcel 079, let alone whether the cow egressed through a gate left open by the public, some deficiency in the gate or fencing, or passed through an unfenced natural boundary. Defendant Earl Reams testified that although he intended the cow to be in Parcel 079, he did not recall placing the cow there and even

if he had, "that cow could have drifted from a different pasture [than Parcel 079]." [#194 at 76:17–22]. Mr. Reams further testified that, given the cow's feeding patterns and the natural and artificial barriers present in Parcel 079, "[the cow] would have to have went through an open gate. They wouldn't just trail back and forth . . . . just for something for do. The creek bottom is good feed. We'd only been in there for five or six days." [*Id.* at 76:17–22]. Mr. Reams stated that he did not know if a gate was left open. [*Id.* at 77:4].[2]

There was also evidence introduced at trial that CDOT's fencing, which Parcel 079 partially relies on to pen in cattle, was in disrepair. CDOT employee Vance Kelso testified that CDOT is responsible for maintaining the gates in its fencing along Parcel 079. [#195 at 39:7–17]. Mr. Reams testified that CDOT's fencing was damaged and that he unsuccessfully tried to get it repaired. [#194 at 89:19–90:20; #184 at 35:14–19]. Mr. Stindt testified that CDOT's fencing was in disrepair and "bad." [#184 at 114:4–116:3].

## II. Application

Ms. Bryant argues that a reasonable jury could not have concluded that the Reams defendants were not negligent. [#183 at 2]. Plaintiff relies on the expert testimony of Ms. Woods and lay testimony of other ranchers to argue that "general ranching industry standards" require

---

[2] Ms. Bryant argues the reverse—that there is no evidence that the gate was left open, and cites the testimony of Mr. Campbell, who they argue testified that he checked the gate along Highway 145 after the accident and found it closed. [#201 at 5]. The court rejects this characterization for two reasons. First, Mr. Campbell testified that "when [he has] seen the Reams cattle out," he has "checked on that gate during those times" and, in response to the question "Has the gate ever been open during those times?" stated "I don't recall it being open." [#194 at 41:5–17]. His testimony was about his experience in general, not specific to the day of the accident. Second, as part of its duty to view the evidence in the light most favorable to the non-moving party and in support of the jury's verdict, testimony that merely tends to contradict a reasonable inference the jury may have gleaned from other testimony is not an adequate rebuttal.

complete fencing around cattle pastures, particularly near highways. [*Id.* at 4]. Additionally, Dr. Peel testified that the fencing in Parcel 079 was inadequate, and "not good management." [*Id.*]. Plaintiff argues that Defendants put on no evidence to rebut these conclusions or to establish that they took reasonable or appropriate measures to contain the cow. [*Id.* at 6]. Plaintiffs concede that Defendants did have expert testimony to support their case, but counter that those expert opinions were premised on the report by Mr. Stindt, and there was "no testimony that the conditions that existed [when the report was made] were the same as, or even similar to, those that existed on the date of the accident." [*Id.*].

The Reams Defendants counter that they offered "more than sufficient, competent evidence from which the jury could have reached its verdict." [#196 at 4]. The Reams Defendants also focus on the absence of evidence, pointing out that there was no direct evidence offered establishing where the cow at issue came from or its path to the highway. [*Id.*]. The Reams Defendants argue that the jury heard evidence that a member of the public passing by might have accidently left one of the gates open, or perhaps the cow passed through a damaged section of CDOT fencing, or perhaps still the cow was unusually motivated and traversed one of the natural barriers. [*Id.* at 4–6]. The Reams Defendants further rely upon their testimony that they had periodically checked the area to ensure that no cows were escaping, and would maintain their barriers to the extent necessary if they proved insufficient. [*Id.* at 6].

As to the expert testimony of Dr. Peel, Defendants argues that his testimony established that foolproof fencing is not feasible—cows are large and powerful animals and will find a way if there is a will. [*Id.* at 7]. Nearby ranchers like Ms. Galley testified that cattle escapes were not uncommon even with fencing. [*Id.*]. Dr. Peel further testified that the use of natural barriers is

9

not uncommon, and the fencing around Parcel 079 was adequate as least as to those sections for which the Reams Defendants were responsible. [*Id.*]. The Reams also rely upon the testimony of Mr. Stindt, who testified that it was common practice in Montrose County for ranchers to use natural barriers for some locations rather than barriers, and that both Mr. Stindt and Dr. Peel testified that there was sufficient water and feed on Parcel 079 so that cattle would not be motivated to scale the rocky terrain to Highway 145 in search of feed. [*Id.*]. In sum, the Reams Defendants conclude there was ample evidence from which the jury could have found that the Reams Defendants were not negligent.

In her Reply, Plaintiff argues that she carried her burden to prove negligence. [#201]. She points to the testimony of Ms. Woods who testified that it was "more likely than not" that the cow at issue came from the 079 Parcel. [*Id.* at 3]. Plaintiff's argument is substantially the same as in the original motion—there was more evidence to support a finding of negligence than there was to establish reasonable care, and thus the jury could not have reasonably returned a verdict for the Reams Defendants. [*Id.*].

The court agrees with the Reams Defendants; there is more than sufficient evidence the jury could have relied on to determine that the Reams Defendants were not negligent. Plaintiff is correct that there is countervailing evidence of negligence and insufficient fencing, but the court may not reweigh the evidence, consider the credibility of the witnesses, or substitute its judgment for the jury's. *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 680 (10th Cir. 1981). The issue in this case was negligence, whether the Reams Defendants exercised reasonable care to contain the cow. As described above, there was sufficient evidence to support the jury's verdict. Regardless of where the cow escaped, there is sufficient evidence that the Reams Defendants' actions – even

if ultimately unsuccessful in containing the cow – were reasonable. For instance, if the jury concluded that the cow escaped through an open gate, it had a sufficient basis to believe that the gate was left open through no fault of the Reams Defendants. The jury might have credited Ruth Reams's testimony that passers-by crossing through BLM land sometimes leave the gate open. Or the jury could have concluded that the cow escaped through a hole in the fencing, but believed that it was a CDOT-owned portion of the fence for which the Reams Defendants were not responsible. Though Plaintiff rejects this possibility, stating this would amount to "impermissib[le] speculation" [#201 at 8], this court is mindful that it does not reweigh the evidence nor substitute its own judgment for that of the jury. The jury could also have reached its verdict by concluding that the cow escaped through the Defendants' well-maintained fencing. There was evidence from both lay and expert witnesses that a determined bovine will overcome even well-maintained fences. In deciding whether a new trial is required based on insufficiency of the evidence, a trial court must analyze whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence. *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (internal quotation marks and citations omitted) (citing *M.D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009)). Plaintiff simply fails to carry that burden here.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. The Motion for a New Trial Based on Insufficiency of Evidence Supporting the Verdict [#183] is **DENIED**.

DATED: November 9, 2018                    BY THE COURT:

                                           _____
                                           Nina Y. Wang
                                           United States Magistrate Judge